IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

CHRISTIAN BOGART EDWARDS,

        Plaintiff,

                            3:13-cv-01645-PK

                            OPINION AND ORDER

v.

CAROLYN W. COLVIN,
Commissioner of Social Security,

        Defendant.

PAPAK, Magistrate Judge:

        Plaintiff Christian Edwards ("Edwards") seeks judicial review of the Commissioner of

Social Security's final decision denying her applications for social security insurance ("SSI") and

disability insurance benefits ("DIB") under Titles II and XVI of the Social Security Act (the

"Act"). This Court has jurisdiction pursuant to 42 U.S.C. § 405(g) and 1383(c)(3). I have

considered all of the parties' briefs and all of the evidence in the administrative record. For the reasons set forth below, the Commissioner's final decision is affirmed.

## DISABILITY ANALYSIS FRAMEWORK

To establish disability within the meaning of the Act, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner has established a five-step sequential process for determining whether a claimant has made the requisite demonstration. *See Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); *see also* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). At the first four steps of the process, the burden of proof is on the claimant; only at the fifth and final step does the burden of proof shift to the Commissioner. *See Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

At the first step, the Administrative Law Judge considers the claimant's work activity, if any. *See Bowen*, 482 U.S. at 140; *see also* 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the ALJ finds that the claimant is engaged in substantial gainful activity, the claimant will be found not disabled. *See Bowen*, 482 U.S. at 140; *see also* 20 C.F.R. §§ 404.1520(a)(4)(i), 404.1520(b), 416.920(a)(4)(i), 416.920(b). Otherwise, the evaluation will proceed to the second step.

At the second step, the ALJ considers the medical severity of the claimant's impairments. *See Bowen*, 482 U.S. at 140-141; *see also* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment is "severe" if it significantly limits the claimant's ability to perform basic work activities and is expected to persist for a period of twelve months or longer. *See Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. §§ 404.1520(c), 416.920(c). The ability to perform basic work

activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b); *see also Bowen*, 482 U.S. at 141.   If the ALJ finds that the claimant's impairments are not severe or do not meet the duration requirement, the claimant will be found not disabled. *See Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c), 416.920(a)(4)(ii), 416.920(c).

If the claimant's impairments are severe, the evaluation will proceed to the third step, at which the ALJ determines whether the claimant's impairments meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d).   If the claimant's impairments are equivalent to one of the impairments enumerated in 20 C.F.R. § 404, subpt. P, app. 1, the claimant will conclusively be found disabled. *See Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d).

If the claimant's impairments are not equivalent to one of the enumerated impairments, the ALJ is required to assess the claimant's residual functional capacity ("RFC"), based on all the relevant medical and other evidence in the claimant's case record. *See* 20 C.F.R. §§ 404.1520(e), 416.920(e).   The RFC is an estimate of the claimant's capacity to perform sustained, work-related, physical and mental activities on a regular and continuing basis, despite the limitations imposed by the claimant's impairments. *See* 20 C.F.R. §§ 404.1545(a), 416.945(a); *see also* SSR 96-8p, 1996 WL 374184.

At the fourth step of the evaluation process, the ALJ considers the RFC in relation to the claimant's past relevant work. *See Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If, in light of the claimant's RFC, the ALJ determines that

the claimant can still perform his or her past relevant work, the claimant will be found not

disabled. *See Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f),

416.920(a)(4)(iv), 416.920(f). In the event the claimant is no longer capable of performing her

past relevant work, the evaluation will proceed to the fifth and final step, at which the burden of

proof is, for the first time, on the Commissioner.

At the fifth step of the evaluation process, the ALJ considers the RFC in relation to the

claimant's age, education, and work experience to determine whether the claimant can perform

any jobs that exist in significant numbers in the national economy. *See Bowen*, 482 U.S. at 142;

*see also* 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 404.1560(c), 404.1566, 416.920(a)(4)(v),

416.920(g), 416.960(c), 416.966. If the Commissioner meets its burden to demonstrate that the

claimant is capable of performing jobs existing in significant numbers in the national economy,

the claimant is conclusively found not to be disabled. *See Bowen*, 482 U.S. at 142; *see also* 20

C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 404.1560(c), 404.1566, 416.920(a)(4)(v), 416.920(g),

416.960(c), 416.966. A claimant will be found entitled to benefits if the Commissioner fails to

meet its burden at the fifth step. *See Bowen*, 482 U.S. at 142; *see also* 20 C.F.R. §§

404.1520(a)(4)(v), 404.1520(g), 416.920(a)(4)(v), 416.920(g).

## LEGAL STANDARD

A reviewing Court must affirm an Administrative Law Judge's decision if the ALJ

applied the proper legal standards and his findings are supported by substantial evidence in the

record. *See* 42 U.S.C. § 405(g); *see also Batson v. Comm'r*, 359 F.3d 1190, 1193 (9th Cir.

2004). "'Substantial evidence' means more than a mere scintilla, but less than a preponderance;

it is such relevant evidence as a reasonable person might accept as adequate to support a

conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007), *citing Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006).

The Court must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Id.* The Court may not substitute its judgment for that of the Commissioner. *See id., citing Robbins*, 466 F.3d at 882; *see also Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If the ALJ's interpretation of the evidence is rational, it is immaterial that the evidence may be "susceptible [of] more than one rational interpretation." *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).

## BACKGROUND

Born in March, 1957 Edwards was 53 years old at the time of the first administrative hearing. Tr. 39.[1] She protectively filed for SSI and DIB on May 8, 2008, alleging disability as of December 15, 2004 due to panic attacks, anxiety, migraines, a cracked skull, a learning disability, bi-polar disorder, arthritis, and hepatitis C. Tr. 216. Edwards completed the ninth grade and has past work experience as an electronics assembly worker, a care giver, a retail clerk, and a stationary binder. Tr. 217, 220.

After her applications were denied initially and on reconsideration, Edwards requested a hearing before an ALJ. Tr. 841. She appeared and testified before ALJ Catherine Lazuran on July 22, 2010. Tr. 35, 841. Edwards was represented by an attorney at the hearing. *Id.* The ALJ also heard testimony from vocational expert ("VE") Kay Wise. Tr. 35. On February 3, 2011, ALJ Lazuran issued a decision finding Edwards not disabled. Tr. 19-29. The Appeals Council denied Edwards's subsequent request for review and she sought judicial review. *See*

---

[1] Citations to "Tr." refer to the page(s) indicated in the official transcript of the administrative record filed herein as Docket Nos. 14 and 15.

3:12-CV-00587-HZ (D. Or. Feb. 2013). On February 7, 2013, the District Court remanded the

case to the Commissioner pursuant to a Stipulation for Remand filed by both parties. Tr. 997-

1001. On February 26, 2013, the Appeals Council issued a Notice remanding the case to ALJ

John Rolph. Tr. 1004-09. A supplemental hearing was held before ALJ Rolph on June 18, 2013,

where Edwards again appeared represented by an attorney. Tr. 861-909. On July 3, 2013, ALJ

Rolph issued a decision finding Edwards was not disabled. Tr. 838-53. This appeal followed.

### SUMMARY OF ALJ FINDINGS

At the first step of the five-step sequential evaluation process, the ALJ found that

Edwards had not engaged in substantial gainful activity since her alleged onset date of December

15, 2004. Tr. 844. At the second step, the ALJ found that Edwards had the following severe

impairments: polysubstance abuse/dependence, bipolar disorder, schizoaffective disorder

(provisional), anxiety, depression, PTSD, personality disorder, degenerative disc disease of the

cervical and lumbar spine with pain/radiculopathy, and hip problems. *Id.* Because Edwards's

impairments were deemed severe, the ALJ properly proceeded to the third step of the analysis.

Tr. 844-45.

At the third step, the ALJ found that Edwards's impairments met sections 12.09 and

12.06 of 20 C.F.R. § 404, subpt P, app. 1. Tr. 845. The ALJ determined, however, that if

Edwards "stopped the substance use, [she] would not have an impairment or combination of

impairments that meets or medically equals any of the impairments listed in" 20 C.F.R. § 404,

subpt P, app. 1. Tr. 846. The ALJ therefore conducted an assessment of Edwards's RFC. Tr.

847.

The ALJ found that if Edwards stopped her substance use, she would have the RFC to

perform light work with the following limitations: she could lift up to 20 pounds occasionally

and carry up to 10 pounds frequently; she may occasionally climb ramps and stairs, balance,

stoop kneel, crouch and crawl; she may never climb ladders, ropes and scaffolds; she may have

only occasional exposure to extreme cold, and no exposure to hazards such as dangerous

machinery and unsecured heights; she is fully capable of learning, remembering, and performing

simple, routine, and repetitive 1- to 2-step work tasks involving simple instructions and

performed in a low stress work environment with regular production pace, few workplace

changes, and no "over the shoulder" supervision; she may have occasional contact with

supervisors and coworkers, but should have minimal contact with the public.  Tr. 847.

At step four, the ALJ found that Edwards was unable to perform any of her past relevant

work. Tr. 851. At step five, the ALJ determined that if Edwards stopped the substance use, she

could perform jobs that exist in significant numbers in the national economy including small

products assembler, housekeeper, and electronics worker.  Tr. 852.  Based on his step five

findings, the ALJ concluded Edwards's substance use disorder was a contributing factor material

to the determination of disability, and that that Edwards would not be disabled if she stopped the

substance use. Tr. 853.  The ALJ therefore concluded that Edwards was not disabled.  *Id.*

## ANALYSIS

Edwards argues that the Commissioner erred because he (1) found that her substance

abuse was material to the disability determination; (2) rejected the lay testimony; and (3)

submitted a deficient hypothetical to the VE.  Because the ALJ's conclusion was supported by

substantial evidence, his decision is affirmed.

### Materiality of Substance Abuse Disorder

Edwards first argues that the ALJ erred in finding that her substance abuse disorder was

material to the disability determination.  Pl.'s Br. 21.  The ALJ must determine whether a

claimant's substance use "is a contributing factor material to the determination of disability." 20
C.F.R. §§ 404.1535, 416.935(a). If a substance use disorder is material to a finding of disability,
then the claimant may not be found disabled under the Act. 42 U.S.C. §§ 423(d)(2)(c) ("An
individual shall not be considered disabled ... if alcoholism or drug addiction would (but for this
subparagraph) be a contributing factor material to the Commissioner's determination that the
individual is disabled"), 1382c(a)(3)(J). The claimant bears the burden of proving her substance
use is not a contributing factor material to the finding of disability. *Ball v. Massanari*, 254 F.3d
817, 821 (9th Cir. 2001).

    The ALJ reviewed the medical evidence and concluded that Edwards's substance abuse
disorder was a material factor in the disability determination. Tr. 853. Specifically, the ALJ
determined that Edwards would not meet a listed mental impairment if she stopped substance
abuse. *Id.* The ALJ was able to make this determination by evaluating medical evidence of
Edwards's functioning during periods of abstinence from substance use. From this evidence the
ALJ determined that "during episodic periods of sobriety ... [Edwards's] mental impairments are
generally stable with mild to moderate symptoms." Tr. 847. Edwards challenges this finding,
arguing that the ALJ's materiality determination is not supported by the medical evidence. She
also argues that the ALJ's finding is not supported by substantial evidence because the ALJ
improperly failed to order further neuropsychological testing, and because the ALJ erroneously
rejected the opinion of Edwards's primary care provider Jeffrey Young, D.O.

    1. The ALJ's Evaluation of the Credited Medical Evidence

    Edwards argues that medical evidence credited by the ALJ shows that her disabling
mental limitations cannot be separated from her drug abuse. Therefore, she contends, the ALJ's
materiality finding was not supported by substantial evidence in the record. To support this

8 – OPINION AND ORDER

claim, Edwards argues that the medical examiners who testified at the administrative hearings both stated that there was "no way" to determine from the record whether substance abuse caused Edwards's mental health limitations. *See* Tr. 900. For example, testifying medical expert Miller Garrison, M.D., stated at the 2013 hearing that he could not determine whether substance abuse caused Edwards's symptoms of cognitive defects, hallucinatory reports or other symptoms from organic mental health problems. Tr. 899-901. Dr. Garrison noted that treating physician Jerry Larsen, M.D., diagnosed opiate dependence but never made a psychiatric diagnosis. Tr. 513-27, 898. At the first administrative hearing, medical expert Robert McDevitt, M.D., testified that it was difficult to distinguish Edwards' problems with attention and concentration from her long history of substance abuse and her ongoing substance abuse. Tr. 80. When asked whether Edwards would be able to do simple jobs with limited social contact after she quit using substances in 2008, Dr. McDevitt testified, "I kind of doubt it." Tr. 82.

While this evidence supports Edwards's rational interpretation of the record, the ALJ's reasonable conclusion must be upheld. *Magallanes*, 881 F.2d at 750. Here, the ALJ noted that Edwards reported two years of sobriety beginning January 1, 2008. Tr. 94, 96, 847. At the June, 2013 hearing, Edwards testified that, while she was clean and sober, she was able to work as a home healthcare attendant, but left her job because she had experienced deaths in her own family and did not want to deal with the deaths of her own patients. Tr. 847, 866-68, 873. The ALJ noted this testimony and the fact that treatment records showed improved mental functioning after Edwards ceased using substances. Tr. 847. For example, in June, 2005 Edwards presented to treating physician Bruce Douglas, M.D. as "much more lucid and appropriate" after 29 days of sobriety, and this improvement in mental functioning was noted to be "directly proportional to her condition with her drug addiction." Tr. 484, 848. After six months of sobriety, Edwards

9 – OPINION AND ORDER

reported fewer headaches and a decrease in anxiety. Tr. 483, 848. Dr. Douglas also noted improvements in Edwards's mood and affect when she was not under the influence of substances. Tr. 482-83.

In further support of the ALJ's determination, both of the testifying medical experts assessed limitations consistent with the RFC. Tr. 849. Dr. Garrison, for example, testified that Edwards could perform "simple, repetitive tasks with limited social contact, limited contact with the public and limited contact with coworkers." Tr. 898. In light of this evidence, the ALJ concluded that Edwards's treatment records reflected substantial improvement with abstinence from drugs, and that her mental impairments were generally stable with mild to moderate symptoms during her periods of sobriety. Tr. 848. The Court thus finds that the ALJ properly weighed the medical evidence and reasonably determined that Edwards's substance use was a material factor in the disability determination. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (the ALJ "is the final arbiter with respect to resolving ambiguities in the medical evidence"). Because the ALJ's interpretation of the record is rational, the Court rejects Edwards's alternative interpretation of the evidence. *Magallanes*, 881 F.2d at 750.

### 2. Failure to order a Neuropsychological Exam

The parties' February, 2013 Stipulation for Remand stated that, on remand, the ALJ would "consider sending [Edwards] for a neuropsychological examination or, if necessary, obtain medical expert testimony to assist in determining the severity of [her] mental abilities with and without substance abuse." Tr. 849, 994-1003. Edwards argues that the ALJ's materiality finding is flawed because there was no neuropsychological testing performed on remand.

As discussed above, the ALJ's materiality finding was supported by substantial evidence. At the hearing on remand, ALJ obtained expert testimony from Dr. Garrison regarding the

10 – OPINION AND ORDER

severity of Edwards's mental limitations. The ALJ gave great weight to the testifying medical experts, who both assessed limitations consistent with the RFC. Tr. 849. Further, Kimberly Goodale, Psy.D., performed a consultative psychological examination of Edwards in October, 2008. Tr. 505-10. Dr. Goodale noted a mildly flat affect, adequate attention and concentration, and noted that Edwards appeared mildly disorganized. *Id.* The ALJ discussed Dr. Goodale's findings in his written decision and assigned it "some weight" in determining Edwards's RFC. Tr. 505-10, 848-49. The ALJ also considered the findings of state agency psychological consultant Joshua Boyd, Ph.D. Tr. 849. Dr. Boyd assessed depression, generalized anxiety disorder, provisional schozoaffective disorder, and polysubstance abuse in remission, and opined that these conditions result in mild to moderate limitations in mental functioning. Tr. 511. The record of Edwards's mental functioning there formed a sufficient basis for the ALJ's conclusion, and the ALJ did not err by declining to order further neuropsychological testing.

3. Medical Opinion of Dr. Young

Dr. Young was Edwards's primary treatment provider beginning in April, 2009. Tr. 556-59, 829-33, 835. On September 15, 2011, Dr. Young made statements regarding Edwards's mental functioning. Tr. 835. He opined that Edwards's previous drug use did not cause her bipolar disorder, and concluded that she "is not able to hold down meaningful employment due to the severity of her bipolar disorder." *Id.* Edwards argues that the ALJ improperly rejected Dr. Young's opinion and, as a consequence, made improper findings regarding the materiality of her substance abuse.

The ALJ must consider all the evidence and state why he rejects significant, probative evidence. *Howard v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003). The ALJ rejected Dr. Young's opinion because it did not address the relevant period, was not supported by objective

11 – OPINION AND ORDER

evidence, and was inconsistent with other medical evidence of record. Tr. 850. Here, Dr.

Young's opinion was not especially probative because his statements were rendered outside of

the relevant period and did not address the materiality of Edwards's drug and alcohol abuse. *See*

Tr. 850. The ALJ credited instead the opinion of medical expert Dr. Garrison who addressed

Edwards's substance abuse disorder and found that it was coincident with her mental

impairments. Tr. 845. Dr. Garrison opined that there was "no objective data" that Edwards was

ever clean and sober during the relevant period. Tr. 849, 897-98. The ALJ gave great weight to

Dr. Garrison's opinion and included his limitations in the RFC. Tr. 847, 849. It was proper for

the ALJ to assign greater weight to the more probative evidence that corresponded to the relevant

time period.

        The ALJ also found that Dr. Young's opinion was not supported by objective medical

evidence and was inconsistent with other evidence in the record. For example, medical expert

Dr. Garrison testified that Dr. Young did not offer any objective foundation for his assessment.

It also appears from the record that Dr. Young was not aware of Edwards's substance abuse

problem when making his findings. Tr. 897. By contrast, Dr. McDevitt testified during the July

22, 2010 hearing that Edwards suffered from marked mental limitations when using substances.

Tr. 845. The ALJ reasonably assigned greater weight to Dr. McDevitt's opinion than that of Dr.

Young, which was inconclusive as to Edward's functional abilities during the relevant period.

*Magallanes*, 881 F.2d at 751 ("Where medical reports are inconclusive ... resolution of conflicts

in the testimony are functions solely of the [Commissioner].") The ALJ properly resolved the

conflict between the medical opinions of record, and the ALJ's decision to favor Dr. McDevitt's

opinion over that of Dr. Young's was rational. The ALJ's rejection of Dr. Young's opinion was

supported by legally sufficient reasons and is therefore affirmed. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

**Lay Witness Testimony**

Edwards next argues that the ALJ erred by rejecting lay testimony of Brandon Edwards, Jordan McDonald, Eric Edwards, Taylor Smith, and Steven Edwards. The ALJ must to provide "germane reasons" for rejecting lay testimony. 20 C.F.R. § 404.1513(d)(1); *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). The ALJ need not discuss every witness's testimony, and "if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness." *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012). Inconsistency with other evidence in the record is a germane reason for rejecting the testimony of a lay witness. *Lewis*, 236 F.3d at 511. It is not, however, reversible error to reject lay testimony when "the lay testimony described the same limitations as [claimant's] own testimony, and the ALJ's reasons for rejecting [claimant's] testimony apply with equal force to the lay testimony." *Molina*, 674 F.3d at 1122. In the Ninth Circuit, if the ALJ offers "arguably germane reasons" for dismissing lay evidence, he need not "clearly link his determination to those reasons." *Lewis*, 236 F.3d at 512.

Here, the lay witnesses made statements regarding Edwards's physical and mental limitations. The lay statements described moderate to marked limitations in concentration, comprehension and pace; Edwards's difficulty with the use of her hands; and mood swings, depression, and fatigue. Tr. 354-57, 363-65, 367-69, 371-73, 376, 379. The ALJ considered the lay testimony in his written opinion but assigned it little weight. Tr. 851. First, he noted that the lay statements referred to Edwards's general level of functioning, but did not distinguish between her periods of sobriety and periods when she was abusing substances. Tr. 851. Because the ALJ

determined that Edwards's substance abuse was a material factor in the disability determination, it was necessary to differentiate evidence of Edwards's functioning while sober from evidence of her functioning while using substances. Therefore, the fact that the lay witnesses made general statements about Edwards's functioning was a germane reason for rejecting their testimony. *See Lewis*, 236 F.3d at 512.

The Court also notes that the ALJ found Edwards's subjective symptom testimony was not credible.[2] Tr. 847-51. Because the lay witness statements described limitations substantially similar to those described in Edwards's own testimony, the ALJ's reasons for rejecting Edwards's testimony "apply with equal force to the lay testimony." *Molina*, 674 F.3d at 1122. Even though the ALJ did not clearly link these reasons to his rejection of the lay testimony, he provided legally sufficient reasons in his written decision for rejecting the lay statements. *See Lewis*, 236 F.3d at 512. The ALJ's evaluation of the lay testimony was supported by germane reasons and is therefore affirmed.

**VE Hypothetical**

Edwards argues, finally, that the ALJ's decision was flawed because he submitted a deficient hypothetical to the VE. Specifically, she argues that the RFC did not capture her limitations in hand functioning. Pl.'s Br. 30. Edwards's treatment provider opined that she "has some Raynaud's phenomenon" because her hands turn white due to cold. Tr. 468, 501, 505. The ALJ found that Edwards's Raynaud's syndrome, however, "caused only transient and mild symptoms" based on the credible medical evidence. *See* Tr. 526-31. Consistent with this evidence, the ALJ limited Edwards to occasional exposure to extreme cold. Tr. 845, 847, 850.

---

[2] Edwards does not contest this finding.

14 – OPINION AND ORDER

The Court finds that this RFC adequately captures the credible limitations on Edwards's use of her hands.

Second, Edwards argues that the ALJ did not adequately account for her mental limitations in the RFC. The Court finds that the RFC captured the mental limitations assessed by testifying medical expert Dr. Garrison as well as State Agency medical consultant Dr. Boyd, who found that Edwards "retains the ability to remember and carry out simple routine tasks on a consistent basis." Tr. 536, 538, 849. Because the ALJ included all of Edwards' credible limitations into the hypothetical, he was entitled to rely upon the VE's testimony in formulating his conclusion. *See Lewis*, 498 F.3d at 911. The ALJ's decision is affirmed.

## CONCLUSION

The ALJ's opinion is supported by substantial evidence and is therefore affirmed.

Dated this 16th day of December, 2014.

Honorable Paul Papak
United States Magistrate Judge

15 – OPINION AND ORDER